FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

DEC 2 0 2007

Stephan Harris, Clerk
Cheyenne

Elizabeth A. Richards (Wyo. Bar No. 6-4249)
*ADVOCATES FOR THE WEST*
P.O. Box 1612
Boise, Idaho 83701
(208) 342-7024
(208) 342-8286 (fax)
brichards@advocateswest.org

Attorney for Petitioner Western Watersheds Project

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT; ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES FOREST SERVICE, ) <br> an agency of the United States, ) <br> ) <br> Respondent. ) <br> _____ ) | Case No. 07-CV-232-B <br><br> **PETITION FOR REVIEW** <br> **OF AGENCY ACTION** |

## Introduction

1.   Petitioner Western Watersheds Project (WWP) respectfully seeks judicial review of the final agency action by Respondent U.S. Forest Service adopting a revised Land and Resource Management Plan for the Bighorn National Forest in Wyoming (hereafter, the "Forest Plan") and supporting Final Environmental Impact Statement (FEIS).



PETITION FOR REVIEW -- 1

2. Petitioner seeks also judicial review of Respondent's final agency action implementing the Forest Plan and FEIS in adopting the Decision Notice for the Piney Creek, Little Piney, and Willow Park Allotment Management Plan (hereafter, the "Piney Creek Allotment DN") and supporting Environmental Assessment (EA).

3. Petitioner WWP is a non-profit conservation group with more than 1,300 members, whose mission is to protect and restore western watersheds and wildlife through education, public policy initiatives, and litigation. WWP is headquartered in Idaho, and for several years has maintained staff and an office in Wyoming. WWP staff and members frequently visit the Bighorn National Forest and other adjoining public lands for many recreational, scientific, spiritual, educational, and aesthetic purposes; and have standing to bring this petition.

4. Respondent U.S. Forest Service is an agency or instrumentality of the United States charged with managing the public lands and resources of the Bighorn National Forest in accordance and compliance with federal laws and regulations.

### Jurisdiction and Venue

5. Jurisdiction is appropriate in this Court under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*; the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq.*; the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 *et seq.*; the National Forest

Management Act (NFMA), 16 U.S.C. §§ 1600 *et seq*; and the Equal Access to Justice Act, 28 U.S.C. §§ 2412 *et seq*.

6.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because all or a substantial part of the events or omissions giving rise to the claims herein occurred within Wyoming.

### Final Agency Action and Exhaustion

7.  In 1985, the Forest Service published an environmental impact statement analyzing various levels of grazing – but not including a capability and suitability analysis of which lands could sustain grazing – and adopted a forest plan to guide management activities on the Bighorn National Forest. The Forest Service gave notice in 1999 of its intent to revise the 1985 plan, and that revision is the subject of this petition.

8.  Upon receiving the 2004 draft environmental impact statement and plan, WWP submitted comments challenging the capability and suitability analysis, the lack of grazing alternatives, and the draft's inadequate consideration of the effects of grazing on, among other things, wildlife, riparian areas, water quality, and soils.

9.  When the Forest Service adopted the subsequent Forest Plan in September 2005, and issued the FEIS in November 2005, WWP timely appealed. In August 2006, a reviewing officer for the chief of the Forest Service rejected the appeal. WWP exhausted its administrative remedies in challenging the Forest Service's final agency action of adopting the Forest Plan and accompanying FEIS.

10. The Forest Service began its implementation of the Forest Plan by releasing a draft environmental assessment of the Piney Creek, Little Piney, and Willow Park Allotments in September 2006.

11. WWP submitted comments challenging, among other thing, the EA's capability study, including the EA's failure to incorporate the study into its decision-making, inconsistency with the Forest Plan, monitoring requirements, lack of alternatives, unjustifiably high stocking rates, and failure to take a hard look at the effects of grazing.

12. When the Forest Service released the final EA and the Piney Creek Allotments DN in May 2007, WWP timely appealed. In August 2007, a Forest Service reviewing officer rejected WWP's appeal. WWP exhausted its administrative remedies in challenging the Forest Service's final agency action of adopting the Piney Creek Allotments DN and accompanying EA.

## Legal Background

13. NEPA requires all federal agencies to undertake a thorough and public analysis of the environmental consequences of proposed federal actions. This includes the preparation of a detailed EIS for all major federal actions that may significantly affect the quality of the human environment. 42 U.S.C. § 4332(2)(C).

14. NEPA requires agencies to "rigorously explore and objectively evaluate all reasonable alternatives" to proposed courses of action. 40 C.F.R § 1502.14.

15. NEPA documents must contain accurate scientific analysis, identify the methodology and scientific sources the agency relied on for its conclusions, and reveal any incomplete or unavailable data. 40 C.F.R. §§ 1500.1(b), 1502.22, and 1502.24.

16. NFMA, the federal statute guiding management of the National Forests, requires the Forest Service to prepare detailed forest plans, and sets forth requirements for those plans. 16 U.S.C. § 1604. All actions taken by the Forest Service, including issuance of permits, plans, or contracts for the use of forest lands, must be consistent with forest plans. 16 U.S.C. § 1604(i); 36 C.F.R. § 219.10(e).

17. Under NFMA, forest plans must "provide for diversity of plant and animal communities based on the suitability and capability of the specific land area." 16 U.S.C. § 1604(g)(3)(B).

18. To that end, the 1982 NFMA planning regulations – which the Forest Service expressly followed in adopting the Forest Plan – mandate that the Forest Service determine the "suitability and potential capability of National Forest System lands for producing forage for grazing animals." 36 C.F.R. § 219.20. As part of that determination, "[t]he present and potential supply of forage for livestock . . . shall be estimated." 36 C.F.R. § 219.20(a).

## Legal Claims

19. Petitioner seeks judicial review and reversal of the Forest Plan and FEIS as being arbitrary, capricious, an abuse of discretion, and/or contrary to law under NEPA, NFMA, and the APA, including for the following reasons:

A. In contrast to the 1985 plan analysis and other recent forest plans, such as on the nearby Caribou National Forest, the FEIS failed to address in detail any alternatives proposing varying stocking levels or differing grazing management practices. Each alternative considered in the FEIS was identical in its treatment of domestic livestock grazing, and thus violates NEPA's requirement that a reasonable range of alternatives be considered.

B. The FEIS also failed to take the required "hard look" at the environmental impacts of livestock grazing, in violation of NEPA, including by failing to address, in scientifically valid ways, the adverse effects of livestock grazing on Rocky Mountain bighorn sheep populations, riparian areas, soils, native vegetation, Yellowstone cutthroat trout habitat, and other ecological values;

C. The FEIS's capability and suitability determination, which acknowledges that only 16 to 17 percent of forest lands are available for livestock use, was ignored in the analysis sections of the FEIS, not addressed in the alternatives, and not incorporated into the Forest Plan itself, thus violating both NEPA and NFMA requirements;

D. The FEIS and Forest Plan do not include an estimate of the amount of forage that is currently present or potentially available in the Bighorn Forest, in further violation of NEPA and NFMA.

20. WWP further seeks judicial review and reversal of the Piney Creek Allotment DN and EA as being arbitrary, capricious, an abuse of discretion, and/or contrary to law, including for the following reasons:

A. The Piney Creek Allotment DN and EA rely on the unlawful Forest Plan and FEIS;

B. In stating that soil conditions were degraded on only one percent of the project area, the EA did not disclose the true, on-the-ground impacts of livestock grazing, and so failed to take a "hard look" at the effect of livestock grazing on the soil resources of the Piney Creek, Little Piney, and Willow Park allotments, in violation of NEPA;

C. The Piney Creek Allotment DN and EA failed to address the fact that only between 2 and 8 percent of the allotments were deemed capable for livestock grazing, thus violating NEPA and NFMA;

D. Even though the lands in the allotments were characterized as "not capable" of grazing under the Forest Service's own criteria, the Forest Service arbitrarily and capriciously included those "not capable" lands as being capable of supporting grazing, in violation of NEPA and NFMA;

E. The Piney Creek Allotment DN and EA do not estimate the amount of forage currently present or potentially available on the allotment lands, in violation of NEPA's "hard look" requirement and NFMA;

F. Respondents arbitrarily and capriciously determined that the project area as described in the EA is equivalent to the "activity area" as defined in the Forest Service Soil Management Handbook. As a result, the Respondents' arbitrary and capricious action presents a

PETITION FOR REVIEW -- 7

misleading representation in the EA of the effect of livestock grazing on soils in the allotments, in violation of NEPA and NFMA.

21. For the reasons stated above, Respondent's actions are arbitrary, capricious, an abuse of discretion, and/or not in accordance with law and hence must be reversed and set aside under the APA, 5 U.S.C. § 706(2).

### Prayer for Relief

22. WHEREFORE, Petitioner WWP respectfully prays that the Court:

A. Declare that Respondent violated NEPA and NFMA in adopting the Forest Plan and FEIS, and reverse and set aside the Forest Plan and FEIS as being arbitrary, capricious, an abuse of discretion, and/or contrary to law, pursuant to the judicial review standards of the APA, 5 U.S.C. § 706(2);

B. Declare that Respondent violated NEPA and NFMA in adopting the Piney Creek Allotment DN and EA, and reverse and set aside the Piney Creek Allotment DN and EA as being arbitrary, capricious, an abuse of discretion, and/or contrary to law, pursuant to the judicial review standards of the APA, 5 U.S.C. § 706(2);

C. Grant such injunctive relief as may be requested hereafter by Petitioner;

D. Award Petitioner its reasonable costs, litigation expenses, and attorney fees associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq.*, and/or all other applicable authorities; and/or

E.  Grant such further relief as the Court deems just and proper in order to remedy Respondent's violations of law and protect Petitioner's interests.

Dated this 19th day of December 2007.

Respectfully submitted,

_____
Elizabeth A. Richards (Wyo. Bar No. 6-4249)
*ADVOCATES FOR THE WEST*
P.O. Box 1612
Boise, Idaho 83701
(208) 342-7024
(208) 342-8286 (fax)
brichards@advocateswest.org

Attorney for Petitioner Western Watersheds Project

PETITION FOR REVIEW -- 9